**Ricky HARRIS**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 2, 2002 Session.

April 16, 2003.

Michael E. Moore, Solicitor General, and Mark A. Fulks, Assistant Attorney General, for the appellant, State of Tennessee.

Kenneth F. Irvine, Jr. and Robert R. Kurtz, Knoxville, Tennessee, for the appellee, Ricky Harris.

## OPINION

FRANK F. DROWOTA, III, C.J.,
delivered the opinion of the court, in which WILLIAM M. BARKER, J., joined.

In this appeal, the dispositive issues are whether a claim that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is a cognizable basis for reopening a post-conviction petition under Tennessee Code Annotated section 40–30–217(a) and whether the Court of Criminal Appeals erred in sua sponte treating the petitioner's motion as a petition for writ of error coram nobis based upon newly discovered evidence. The trial court denied the petitioner's motion to reopen on the basis that it did not state a cognizable ground for reopening a post-conviction suit under Tennessee Code Annotated section 40–30–217(a). The Court of Criminal Appeals agreed that the motion did not state grounds for reopening under the post-conviction statute, but the intermediate court sua sponte treated the motion as a petition for writ of error coram nobis and concluded that due process precluded application of the one-year statute of limitations to bar the petition.[1]

The Court of Criminal Appeals therefore remanded the case to the trial court to consider the merits of the coram nobis claim. From this decision, the State filed an application for permission to appeal, primarily arguing that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. We granted the State's application for permission to appeal,[2] and for the reasons herein stated, this Court concludes that the lower courts correctly held that the motion does not state grounds for reopening under the post-conviction statute but that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. The judgment of the Court of Criminal Appeals therefore is reversed, and the judgment of the trial court dismissing the motion is reinstated.

## BACKGROUND

In 1988, the petitioner, Ricky Harris, was convicted of first degree murder and sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal in February of 1991.[3] Harris filed a post-conviction petition in 1992 alleging that his counsel were ineffective and that the State had suppressed exculpatory evidence. The trial court denied post-conviction relief, and the Court of Criminal Appeals affirmed the denial.[4]

1. In holding that due process required tolling of the one-year statute of limitations, the intermediate appellate court relied upon *Workman v. State*, 41 S.W.3d 100 (Tenn.2001) and *Burford v. State*, 845 S.W.2d 204 (Tenn.1992).

2. On May 6, 2002, this Court appointed Kenneth F. Irvine, Jr. to represent Mr. Harris in this appeal. The Court appreciates Mr. Irvine's willingness to accept this appointment

and the excellent representation he and Mr. Robert R. Kurtz have provided Mr. Harris.

3. *See State v. Ricky Jerome Harris*, No. 85, 1990 WL 171507 (Tenn.Crim.App., Knoxville, Nov. 8, 1990), *perm. app. denied* (Tenn., Feb. 4, 1991);

4. *See Ricky Harris v. State*, No. 03C01–9611–CR–00410, 1998 WL 191441 (Tenn.Crim.

On December 10, 1998, just three days after this Court denied Harris's application for permission to appeal, Harris filed a motion in the trial court seeking to reopen his post-conviction petition on the basis that his due process rights under the United States and Tennessee Constitutions had been violated by the State's failure to disclose exculpatory evidence material to his defense. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Sample v. State,* 82 S.W.3d 267 (Tenn.2002).

In particular, Harris alleged that the State withheld the identity of a witness, who was purportedly interviewed via telephone by a law enforcement officer investigating his case. Attached to Harris's motion were purported notes of the alleged interview. These purported notes, which are unsigned and do not include the name of the officer who allegedly conducted the interview, indicate that Ms. Corrine Hampton told the unidentified officer that she had car trouble at approximately 8:25 a.m. on September 8, 1987, on highway 19–E in Hampton, Tennessee; that Harris stopped and assisted her; that she had seen inside his car and inside the trunk of his car; and that she had not seen another person or a dead body anywhere in the car or in the trunk. Ms. Hampton said that she had followed the defendant to Sherwood Chevrolet, where he worked, and obtained minor repairs to her vehicle.

In his motion, the petitioner explained the significance and materiality of the alleged interview notes as follows:

During the trial the State maintained the Petitioner had killed the victim at her home or abducted her and took her to the Carr Cemetery where he disposed of the body or killed her at that point and disposed of the body. The State

maintained this occurred between the time period of 8:00 a.m. and 9:00 to 9:30 a.m. Petitioner testified that he did not commit the crime and that he drove from Hampton straight to Sherwood Chevrolet in Johnson City. If the State would have provided this evidence, petitioner could have presented Ms. Hampton as his alibi witness and corroborated his testimony of what events occurred during the morning of September 8, 1987.

As to when he discovered this information, Harris alleged that he received the purported interview notes along with an anonymous, hand-printed letter after he placed an advertisement in the *Elizabethton Star* newspaper in August of 1998 seeking information about his case that would aid in proving his innocence. The anonymous letter was attached to the petitioner's motion, and it stated that the writer is related to the sheriff who investigated Harris's case and that the writer was shown a copy of the notes of Ms. Hampton's interview by the sheriff, who made the writer promise to keep quiet about the information. According to the letter, the writer later obtained a copy of the interview notes, but was afraid to disclose the information at that time and was doing so in response to Harris's advertisement because the writer had worked with and been a friend of Harris's father.

The trial court denied the petitioner's motion on the basis that it did not state a cognizable ground for reopening under Tennessee Code Annotated section 40–30–217(a). The trial court also pointed out that the petitioner had failed to support his motion with sworn affidavits. The anonymous letter, the anonymous interview notes, and Ms. Hampton's signed statement were not proven or supported by affidavit. The motion was supported

App., April 23, 1998), *perm. app. denied,*

(Tenn., Dec. 7, 1998).

by only the petitioner's affidavit which recited the alleged facts. The petitioner subsequently filed in the trial court an affidavit from Ms. Hampton containing the alleged exculpatory statement she allegedly gave to an unidentified law enforcement officer. Interestingly, the affidavit states only that Ms. Hampton had car trouble in September of 1987, but it does not indicate the exact date in September these events occurred. After reconsidering the petition along with the affidavit, the trial court adhered to its initial conclusion that the motion did not state a cognizable ground for reopening under the post-conviction statute. The trial court did not treat the motion as a petition for writ of error coram nobis.

Harris appealed, and the Court of Criminal Appeals agreed with the trial court that a claimed *Brady* violation is not a ground for reopening under Tennessee Code Annotated section 40–30–217(a). Nonetheless, a majority of the intermediate court sua sponte treated the motion as a petition for writ of error coram nobis and concluded that due process precluded application of the one-year writ of error coram nobis statute of limitations.[5] The intermediate court therefore remanded the case to the trial court to determine: (1) whether the State suppressed exculpatory evidence; (2) whether the petitioner was diligent and not at fault in failing to raise the issue earlier; and (3) whether the evidence may have resulted in a different outcome.

From this decision the State filed an application for permission to appeal, which this Court granted. For the following reasons, the judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is reinstated.

### *ANALYSIS*

#### I. *Motion to Reopen*

■ We begin our review with the threshold issue of whether the lower courts properly determined that the issue raised by the petitioner, *i.e.,* the suppression of exculpatory evidence, was not a proper basis upon which to reopen a post-conviction petition. The State argues that the suppression of exculpatory evidence is not listed in Tennessee Code Annotated section 40–30–217(a) as a ground for reopening a post-conviction petition. The petitioner asserts that, even if the motion did not assert a cognizable ground for reopening, the Court of Criminal Appeals correctly treated it as a petition for writ of error coram nobis.

Under the provisions of the Post–Conviction Procedure Act, a petitioner "must petition for post-conviction relief ... within one (1) year of the final action of the highest state appellate court to which an appeal is taken...." Tenn.Code Ann. § 40–30–202(a). Moreover, the Act "contemplates the filing of only one (1) petition for post-conviction relief." Tenn.Code Ann. § 40–30–202(c). After a post-conviction proceeding has been completed and relief has been denied, as in this case, a petitioner may move to reopen only "under the limited circumstances set out in 40–30–217." *Id.* These limited circumstances include the following:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the

---

**5.** In dissent, Judge Witt opined that *Workman* was expressly limited to capital cases and could not be applied to toll the one-year writ of error coram nobis statute of limitations in this case but that due process may apply in some cases to toll the post-conviction statute of limitations bar of Tennessee Code Annotated section 40–30–202(b).

time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

(2) The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn.Code Ann. § 40–30–217(a)(1)–(4). The plain language of this statute provides only three grounds for reopening—a new constitutional right that is given retroactive application, new scientific evidence of actual innocence, and evidence of an improperly enhanced sentence. A claim that the State suppressed or failed to disclose exculpatory evidence in violation of *Brady* simply is not one of the statutory grounds for reopening a post-conviction proceed-

ing.[6] Accordingly, we hold that the trial court and the Court of Criminal Appeals correctly ruled that the petitioner's claim that the State failed to disclose exculpatory evidence is not a cognizable ground for reopening his post-conviction proceeding.

## II. *Writ of Error Coram Nobis*

■ We must next determine whether the Court of Criminal Appeals erred in sua sponte treating the petitioner's motion to reopen as a petition for writ of error coram nobis. The State argues that the intermediate court erred because the allegations in the motion do not constitute subsequently or newly discovered evidence that the defendant was without fault in presenting at the time of the trial. Further, the State points out that an alleged violation of *Brady* is not cognizable in a writ of error coram nobis proceeding. The petitioner, by and through appointed counsel, responds that the Court of Criminal Appeals's action was appropriate because the allegations of the motion sufficiently state a coram nobis claim. In his pro se application for permission to appeal to the Court of Criminal Appeals, Harris argued that the writ of error coram nobis does not apply in this case and alleged that the trial court had erred by simply referring to *State v. Mixon*, 983 S.W.2d 661 (Tenn. 1999), which involved a petition for writ of error coram nobis.

Upon careful consideration, we conclude that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. These proceedings are fundamen-

---

**6.** As the Court of Criminal Appeals pointed out, the General Assembly's intent to exclude *Brady* claims as grounds for reopening is evidenced by other statutory provisions that provide relief from the procedural bar of waiver when a claim is not raised because of a *Brady* violation. *See* Tenn.Code Ann. § 40–30–

206(g)(2) ("failure to present the ground was the result of state action in violation of the federal or state constitution."). Clearly, the General Assembly knows how to make exceptions for *Brady* violations. It simply chose not to include such claims in the statute addressing motions to reopen.

tally distinct in terms of the governing procedural rules and the grounds for relief. Motions to reopen are filed only after the petitioner has unsuccessfully pursued post-conviction relief. Therefore, the statute governing such motions contemplates a summary proceeding in which the trial court can readily determine whether or not one of the three very narrow grounds for reopening exists. As previously indicated, the three grounds for reopening a post-conviction petition are: (1) a new constitutional right that is given retroactive application; (2) new scientific evidence of actual innocence; or (3) evidence of an improperly enhanced sentence. Tenn.Code Ann. § 40–30–217(a)(1)–(4): Because all of these grounds can and likely will be proven by documentary evidence alone, there will rarely be a factual dispute as to their existence. When a ground for reopening is proven, the only factual dispute will be whether or not the petitioner has established by clear and convincing evidence that he or she is entitled to have the conviction set aside or the sentence reduced. Tenn.Code Ann. § 40–30–217(a)(4). Again, because of the nature of the grounds for reopening, even this factual issue should be relatively uncomplicated. Therefore, although the State may choose to respond to a motion to reopen, the statute certainly does not require the filing of a response. Where, as here, a motion

to reopen is denied, the petitioner has only ten days to file an application for permission to appeal in the Court of Criminal Appeals, with the State having ten days to respond. Tenn.Code Ann. § 40–30–217(c). The record on appeal therefore is minimal, consisting of the application which must have attached to it all documents filed by both parties in the trial court and the order denying the motion. *Id.*

Writ of error coram nobis claims in criminal cases are governed by a different statute, Tennessee Code Annotated section 40–26–105,[7] which currently provides:

> [u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to

---

**7.** As this Court has recognized, "[t]he writ of error coram nobis is an extraordinary remedy known more for its denial than its approval." *State v. Mixon,* 983 S.W.2d 661, 666 (Tenn. 1999). The writ of error coram nobis was limited in scope in Tennessee to civil proceedings until the General Assembly passed a statute in 1955 extending it to criminal proceedings. *Id.* at 668. Criminal coram nobis proceedings were "to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except in so far as inconsistent herewith." 1955 Tenn. Pub. Acts 166. However, in 1971, Rule 60 of the Tennessee Rules of Civil

Procedure became effective and superseded the writ of error coram nobis in civil cases. *Mixon,* 983 S.W.2d at 668. Because the General Assembly has never repealed the statute, the writ of error coram nobis continues to be a remedy in criminal actions, but "the procedure governing the remedy is based upon the civil writ of error coram nobis which has been abolished for almost 28 years." *Id.* The statutes thus give rise to an anomalous situation—an existing remedy that is governed by antiquated procedural rules. *Id.* Nonetheless, the General Assembly has not resolved this anomaly since it was first pointed out four years ago in *Mixon.*

present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals. Even more significant to the issue in this appeal, however, is a distinction relating to the statute of limitations. In motion to reopen proceedings, the petitioner must set out the factual basis for his or her claim, including facts to show that the motion has been timely filed within one year of the ruling establishing a new retroactive constitutional right or within one year of the ruling holding a previous enhancing conviction invalid. *See* Tenn.Code Ann. § 40–30–217(a)(1) & (3). Although coram nobis claims also are governed by a one-year statute of limitations,[8] the State bears the burden of raising the bar of the statute of limitations as an affirmative defense. *See Sands v. State*, 903 S.W.2d 297, 299 (Tenn.1995).

The distinctions between motion to reopen and coram nobis proceedings illustrate why it will rarely, if ever, be appropriate for an appellate court to sua sponte treat a motion to reopen as a petition for writ of error coram nobis. In doing so, the appellate court will deprive the State

of an opportunity to file an appropriate response in an error coram nobis proceeding, and the trial court, which is accustomed to resolving the factual disputes likely to arise, will be deprived of the opportunity to determine the merits of the petition in light of the State's response. In sua sponte treating the motion to reopen as a petition for writ of error coram nobis, the Court of Criminal Appeals in this case apparently failed to consider the fundamental distinctions between these proceedings. The intermediate appellate court's reliance upon *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn.1995), as authority for its action was misplaced. In considering whether a trial court had the authority to treat a habeas corpus petition as a petition for writ of certiorari, this Court in *Norton* stated:

> It is well settled that a trial court is not bound by the title of the pleading, but has the discretion to treat the pleading according to the relief sought. *Fallin v. Knox County Board of Commissioners*, 656 S.W.2d 338, 342 (Tenn.1983); *State v. Minimum Salary Dep't. of A.M.E. Church*, 477 S.W.2d 11, 12 (Tenn.1972).

*Id.* at 319 (emphasis added). The decision in *Norton* recognizes the authority of trial courts to treat a pleading in accordance with the relief sought.[9] However, the decision in *Norton* does not support

---

**8.** *See* Tenn.Code Ann. § 27–7–103 ("[t]he writ of error coram nobis may be had within one (1) year after the judgment becomes final...."); *State v. Mixon*, 983 S.W.2d 661, 669 (Tenn.1999).

**9.** The concurring opinion indicates that, because the pleading was titled "motion to reopen petition for post-conviction relief or in the alternative motion for a new trial based on newly discovered evidence," the petitioner on appeal could have complained that the trial court erred in failing to treat the pleading as a petition for writ of error coram nobis. We disagree. As a practical matter, such a rule would unnecessarily expend judicial re-

sources and fundamentally alter motion to reopen proceedings. For example, to avoid a remand, trial courts likely would evaluate the merits of every possible alternative claim, even where, as here, the petitioner does not actively pursue the alternative claim. The State would also likely respond to the alternative claims to raise any applicable affirmative defenses, transforming the summary motion to reopen proceeding into lengthy litigation. Given the fundamental differences between motions to reopen and petitions for writ of error coram nobis, a petitioner who is seeking to have the trial court consider both of these avenues for relief must be required to actively pursue both in the trial court. When a peti-

the notion that appellate courts may independently examine motions to reopen to determine whether the petitioner should have pursued a completely different avenue of relief in the trial court. Appellate review generally is limited to the issues raised and decided in the trial court. *See, e.g.,* Tenn. R.App. P. 13 & 36. Adherence to this principle is particularly important in the context of motions to reopen given the limited, summary, and expedited nature of such proceedings. Indeed, were appellate courts to routinely evaluate such motions and address grounds never litigated nor decided in the trial court, the summary nature of such proceedings would be irrevocably altered. Therefore, we conclude that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. Having so decided, we need not address any issues relating to the one-year coram nobis statute of limitations.[10]

tioner does not do so, he or she should not be heard to complain on appeal about the trial court's failure to evaluate the merits of the alternative claim for relief.

10. While we reserve this question for another day, we feel compelled to point out in response to the dissenting opinion that the threshold inquiry in the *Burford* due process analysis is whether a petitioner has alleged a "later-arising" prima facie claim which will be precluded by strict application of the statute of limitations. *See, e.g., Burford,* 845 S.W.2d at 209; *Sands v. State,* 903 S.W.2d 297, 301 (Tenn.1995). In this case, the evidence upon which Harris relies does not appear to be "newly discovered" nor does Harris appear to be "without fault" in failing to previously present it. As the State points out, if the allegations are true, at 8:30 a.m. on the day the victim disappeared, Harris stopped along the roadside and rendered assistance to a stranded motorist. Harris apparently searched his trunk for the appropriate tools, tightened the fan belt on the motorist's car, and started the car. Throughout these activities, the motorist accompanied Harris, allegedly observing his actions as well as the trunk

## CONCLUSION

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court dismissing the motion is reinstated. Costs of this appeal are taxed to the appellee, Ricky Harris, for which execution may issue if necessary.

JANICE M. HOLDER, J., filed a concurring opinion.

E. RILEY ANDERSON, J., filed a concurring and dissenting opinion, in which ADOLPHO A. BIRCH, JR., J., joined.

JANICE M. HOLDER, J., concurring.

I concur in the majority's holding that the petitioner's motion did not state grounds for reopening a post-conviction petition under Tennessee Code Annotated section 40–30–217(a). I also concur in the

and interior of his car. Therefore, if the allegations are true, Harris was acutely aware of the existence of the stranded motorist prior to his initial trial. Moreover, Harris appears to be at fault in failing to previously present this evidence prior to trial since he failed to disclose her existence and gave a statement to police indicating that he drove directly from the victim's home to his work place on the morning of the victim's disappearance. Thus, the evidence upon which Harris relies does not appear to be subsequently or newly discovered, and Harris does not appear to be "without fault" in failing to previously present this evidence. Therefore, accepting for the sake of argument the dissent's proposition that the *Burford* due process analysis applies in this case, Harris would not be entitled to relief from the one-year statute of limitations. Indeed, it would not be necessary for a court to engage in the balancing portion of the analysis because the proof upon which Harris relies does not appear to state a prima facie later-arising claim under the writ of error coram nobis statute.

majority's holding that the Court of Criminal Appeals erred in sua sponte treating the motion as a petition for writ of error coram nobis. I write separately, however, for several reasons. Both the title and substance of the petitioner's pleading indicate that the pleading requested more than a reopening of the petitioner's post-conviction proceeding. The majority opinion fails to reflect the alternative nature of the pleading in this case. Because the majority fails to acknowledge the relief requested in the motion, I also disagree with its conclusion as to the role of the appellate courts in evaluating the petitioner's claims. Under the facts of this case, however, the petitioner waived the coram nobis issue. Moreover, even if the issue had not been explicitly waived, I disagree with the concurring and dissenting opinion's conclusion that the Court should address the tolling issue.

As the concurring and dissenting opinion points out, the petitioner titled his pleading "motion to reopen petition for post-conviction relief *or in the alternative, motion for a new trial based on newly discovered evidence.*" (Emphasis added.) The petitioner alleged that he was entitled to a new trial because he had obtained newly discovered evidence supporting his alibi. Given the allegations of the pleading and its title, the trial court, under *Norton,* could have exercised its discretion to treat the alternative part of the motion as a petition for writ of error coram nobis. *See Norton v. Everhart,* 895 S.W.2d 317, 319 (Tenn.1995) (holding that a trial court has discretion to treat a pleading according to the relief sought).

If on appeal the petitioner had complained that the trial court erred in failing to treat the alternative part of the motion as a petition for writ of error coram nobis, the Court of Criminal Appeals could have addressed whether the pleading raised a

coram nobis claim. However, the petitioner affirmatively waived this issue in his appeal to the Court of Criminal Appeals. In his appeal filed in the Court of Criminal Appeals, the petitioner stated that he "never intended to file a writ of error coram nobis in this case." He argued that "the writ of error coram nobis doesn't apply to the case at bar and the trial court abused its discretion in ... deny[ing] the motion to reopen post conviction petition." Because the issue was explicitly waived, the Court of Criminal Appeals erred in sua sponte considering the alternative part of the motion as a petition for writ of error coram nobis.

The concurring and dissenting opinion acknowledges the dual nature of the motion. It fails, however, to acknowledge the petitioner's affirmative waiver of the coram nobis issue. Instead, the opinion concludes that the statute of limitations for the coram nobis claim should be tolled. Even if the petitioner had not disavowed his coram nobis claim in the intermediate court, in my opinion the tolling issue should not be addressed at this time because of the limited appellate record before us. The trial court has never had the opportunity to consider the facts alleged in support of the coram nobis claim and has never had the opportunity to consider whether the statute of limitations should be tolled.

*Workman v. State,* 41 S.W.3d 100 (Tenn. 2001), does not compel a contrary result. Both the Court of Criminal Appeals and the concurring and dissenting opinion rely on *Workman* to support the proposition that the statute of limitations for a petition for writ of error coram nobis in this case should be tolled. Reliance upon *Workman* is misplaced. In *Workman,* the Court held that due process required tolling of the coram nobis statute of limitations under the circumstances of that case. The

present case, however, differs procedurally from *Workman*. In *Workman*, a petition for writ of error coram nobis was filed in the trial court, and the trial court specifically rejected Workman's claim that due process required tolling of the statute of limitations. 41 S.W.3d at 101. In this case, the trial court never had the opportunity to consider whether the coram nobis statute of limitations should be tolled. Furthermore, in *Workman*, there was no dispute that Workman had requested the evidence, that it was not produced, and that it was later provided to him. *Id.* at 103. In this case, the petitioner's factual allegations relevant to the tolling issue are subject to considerable dispute. Assuming that there had been no waiver of the coram nobis issue, the Court of Criminal Appeals should have remanded the case for further proceedings in the trial court with regard to the tolling issue. At such time, the trial court could have made its findings, and an appellate court could have properly exercised its role.

In conclusion, I concur in the majority's holding that it was error for the Court of Criminal Appeals to sua sponte treat the petitioner's motion as a petition for writ of error coram nobis. However, I would reach this holding because the petitioner affirmatively waived the issue of whether the trial court erred in failing to consider the alternative language in his motion as a petition for writ of error coram nobis. I agree with the majority's conclusion that the Court need not address the issue of whether the statute of limitations for a petition for writ of error coram nobis should be tolled in this case. Even if the coram nobis issue had not been waived, I would reach this conclusion for the additional reason that the case should have been remanded to the trial court to address the tolling issue.

E. RILEY ANDERSON, J., with whom ADOLPHO A. BIRCH, JR., J., joins, concurring in part and dissenting in part.

I concur in the majority's opinion that the petitioner's motion did not establish grounds to reopen his post-conviction suit pursuant to Tennessee Code Annotated section 40–30–217(a) (1997). I dissent, however, from the majority's conclusion that the Court of Criminal Appeals erred in treating the motion as a petition for the writ of error coram nobis. In my view, the substance of the motion alleged grounds to be treated as a petition for the writ of error coram nobis and the majority of this Court has erred in failing to address the important constitutional issue this case was taken to resolve.

Turning to the merits of the case, I would hold that the due process balancing analysis under *Workman v. State*, 41 S.W.3d 100 (Tenn.2001), may toll the one-year writ of error coram nobis statute of limitations where the prosecution has suppressed exculpatory evidence in a non-capital proceeding. Indeed, this Court has never distinguished between capital and non-capital cases in considering whether due process mandates the tolling of a statute of limitations. I would also hold that the petitioner's motion asserted a prima facie case for the issuance of a writ of error coram nobis and raised grounds requiring that the statute of limitations be tolled under due process principles.

I would therefore affirm the Court of Criminal Appeals' judgment remanding the case to the trial court for a determination of whether (1) the petitioner has newly discovered evidence relating to matters litigated at trial, (2) the petitioner was without fault in failing to present the evidence, and (3) the evidence may have resulted in a different judgment had it been presented at trial. Because the majority

opinion fails to address these difficult issues, I respectfully dissent.

## BACKGROUND

As the majority accurately summarizes, the petitioner, Ricky Harris, was convicted of first degree murder and sentenced to serve life imprisonment in 1988. His conviction and sentence were affirmed on direct appeal in February of 1991. He later filed a post-conviction petition alleging that his counsel were ineffective and that the State had suppressed exculpatory evidence. The trial court denied post-conviction relief and the Court of Criminal Appeals affirmed the decision in December of 1998.[1]

On December 10, 1998, the petitioner filed a motion in the trial court seeking to reopen the post-conviction case on the grounds that the prosecution withheld exculpatory alibi evidence at trial in violation of due process under the United States and Tennessee Constitutions. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Sample v. State*, 82 S.W.3d 267 (Tenn.2002). The motion to reopen alleged that the State had withheld the identification of a witness who had stated that she was with the petitioner during the time prosecutors alleged he was disposing of the victim's body. According to the motion, which was accompanied by interview notes purportedly taken by a police officer, the witness, Corrine Hampton, said that she had car trouble at about 8:25 a.m. on September 8, 1987, and that the petitioner stopped to help her. She further stated that she did not see a body inside the petitioner's car or trunk and

that she followed the petitioner to Sherwood Chevrolet to have her car repaired.

The motion asserted that the petitioner learned of this exculpatory evidence only after receiving an anonymous letter in response to a newspaper ad the petitioner had placed in the *Elizabethon Star* seeking information about the case in August of 1998. The motion explained the materiality of the evidence:

> During the trial the State maintained the Petitioner had killed the victim at her home or abducted her and took her to the Carr Cemetery where he disposed of the body or killed her at that point and disposed of the body. The State maintained that this occurred between the time period of 8:00 a.m. and 9:00 to 9:30 a.m. Petitioner testified that he did not commit the crime and that he drove [ ] Hampton straight to Sherwood Chevrolet in Johnson City. If the State would have provided this evidence, petitioner could have presented Ms. Hampton as his alibi witness and corroborated his testimony....

Although the petitioner initially submitted only his own affidavit reciting the alleged facts, he later filed an affidavit containing the allegedly exculpatory statements made by the witness in question.[2]

The trial court denied the motion after finding that the alleged exculpatory evidence did not constitute an appropriate ground for reopening a post-conviction petition under Tennessee Code Annotated section 40–30–217(a). On appeal, the Court of Criminal Appeals agreed that the suppression of exculpatory evidence is not

---

1. *See State v. Ricky Jerome Harris*, No. 85, 1990 WL 171507 (Tenn.Crim.App., Nov.8, 1990), *perm. app. denied*, (Tenn., Feb. 4, 1991); *Ricky Harris v. State*, No. 03C01–9611–CR–00410, 1998 WL 191441 (Tenn. Crim.App., April 23, 1998), *perm. app. denied*, (Tenn., Dec. 7, 1998).

2. The trial court accepted the affidavits as filed, and the Court of Criminal Appeals treated them as a supplemental record on appeal.

a ground upon which to reopen a post-conviction case under Tennessee Code Annotated section 40–30–217(a). A majority of that court nonetheless concluded that the motion should be treated as a petition for the writ of error coram nobis and that *Workman v. State,* 41 S.W.3d 100 (Tenn. 2001), which held that due process may toll the one-year writ of error coram nobis statute of limitations in a capital case, should apply and not be limited to capital cases. The case was therefore remanded for the trial court to determine (1) whether the State suppressed exculpatory evidence, (2) whether the petitioner was diligent and not at fault in failing to raise the issue earlier, and (3) whether the evidence may have resulted in a different outcome. Unlike the majority of this Court, I would affirm the Court of Criminal Appeals' judgment.

## ANALYSIS

### Motion to Reopen

The majority opinion correctly begins its analysis with the threshold question of whether the issue raised by the petitioner, *i.e.,* the State's suppression of exculpatory evidence, was a proper basis upon which to reopen a post-conviction petition. The Post–Conviction Procedure Act requires a petitioner to "petition for post-conviction relief . . . within one (1) year of the final action of the highest state appellate court to which an appeal is taken. . . ." Tenn. Code Ann. § 40–30–202(a) (1997). Moreover, the Act "contemplates the filing of only one (1) petition for post-conviction relief." Tenn.Code Ann. § 40–30–202(c).

A petitioner may move to reopen post-conviction proceedings only "under the limited circumstances set out in § 40–30–217." Tenn.Code Ann. § 40–30–202(c). As the majority notes, the circumstances include:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

(2) The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn.Code Ann. § 40–30–217(a)(1)–(4) (1997). These circumstances plainly do not allow the reopening of a post-conviction petition based on the State's suppression of exculpatory evidence. I therefore agree with the majority that the issue raised by the petitioner did not satisfy the limited statutory grounds for reopening a post-conviction proceeding set forth above.

Although I agree with the majority's conclusion, Judge Witt's dissenting opinion from the Court of Criminal Appeals expresses a view that I share. Judge Witt

recognized that the prosecutor's duty to reveal exculpatory evidence on both constitutional and ethical grounds is well-established and that the suppression of exculpatory evidence violates the accused's right to a fair trial. *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Judge Witt therefore concluded that the suppression of exculpatory evidence, although not a ground to reopen a post-conviction case, may establish a due process basis for *tolling the post-conviction statute of limitations* in cases where a petitioner's liberty interest in litigating the issue after the expiration of the statute of limitations outweighs the State's otherwise legitimate interest in finality. *See Burford v. State,* 845 S.W.2d 204 (Tenn.1992).

I share Judge Witt's concern that the State should not benefit from delay it has created by suppressing exculpatory evidence and violating an accused's constitutional rights. *See Sample v. State,* 82 S.W.3d at 276. The legislature, however, has not indicated that a post-conviction case may be reopened on this basis, even though it has properly recognized the consequences of the State's suppression of exculpatory evidence with respect to relieving a petitioner from other post-conviction procedural defaults. *See* Tenn.Code Ann. § 40–30–206(g)(2) (1997) (ground not barred by waiver if the "failure to present the ground was the result of state action in violation of the federal or state constitution."). While legislative action would be the simplest means for resolving these issues, I nonetheless agree with the majority that the State's suppression of exculpatory evidence is not a ground upon which to reopen a post-conviction proceeding under the current provisions of Tennessee Code Annotated section 40–30–217(a).

### Writ of Error Coram Nobis

The majority next concludes that the Court of Criminal Appeals erred in its sua sponte determination that the petitioner's motion to reopen should be treated as a petition for the writ of error coram nobis. The majority reasons that the pleading did not mention the writ of error coram nobis, that the petitioner's brief to the Court of Criminal Appeals indicated that he did not intend to file a petition for the writ of error coram nobis, and that there are procedural and factual differences between a motion to reopen and a petition for the writ of error coram nobis.

Although I agree that sua sponte action by the appellate court may be infrequent, I disagree with the majority's view that the Court of Criminal Appeals' action was error in this case and with Justice Holder's concurring opinion's conclusion that the petitioner waived review of the issue. In my view, the Court of Criminal Appeals' action was correctly based on the *substance* of the petitioner's pleading and these issues have now been presented directly to this Court. Moreover, since the majority's opinion does not prohibit the petitioner from filing a petition for the writ of error coram nobis following this appeal, the identical issues will undoubtedly return to this Court. Because the Court of Criminal Appeals' action was correct, and in the interests of judicial economy and efficiency, I would address the merits of the issues as now presented and argued.

Although the writ of error coram nobis is a narrow remedy, *see State v. Mixon,* 983 S.W.2d 661, 666 (Tenn.1999), its requirements are well-established:

Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have

resulted in a different judgment, had it been presented at the trial.

Tenn.Code Ann. § 40–26–105 (1997); *see also State v. Mixon,* 983 S.W.2d at 668. A petitioner must therefore show that (1) there is newly discovered evidence relating to matters litigated at the trial, (2) the petitioner was without fault in failing to present this evidence at the proper time, and (3) the evidence may have resulted in a different judgment had it been presented at the trial. The remedy in the appropriate case is a new trial. *Id.*

The caption of the petitioner's pleading belies the majority's conclusion that it was intended solely as a motion to reopen the petitioner's post-conviction suit. The pleading is entitled a "motion to reopen petition for post-conviction relief *or in the alternative, motion for a new trial based on newly discovered evidence.*" (Emphasis added.) The motion was not limited to grounds for reopening the petitioner's post-conviction suit and instead included the "newly discovered evidence" requirement for the writ of error coram nobis. In sum, the majority's premise that the motion was intended solely as a request to reopen the petitioner's post-conviction proceeding is inconsistent with the very title of the document.

More importantly, the substance of the petitioner's pleading also belies the majority's conclusion. *See Norton v. Everhart,* 895 S.W.2d 317, 319 (Tenn.1995) (recognizing that a court is not limited to the title or form of a pleading and must instead look to its substance). The motion asserted that the State withheld the identity of a witness who told a police officer that the petitioner assisted her when she had car trouble, that she did not see a dead body in the petitioner's car or trunk, and that she followed the petitioner to Sherwood Chevrolet to have her car repaired. The motion further asserted that the evidence

would have corroborated the petitioner's alibi for the time period in which the State alleged he was disposing of the body. Finally, the motion alleged that the petitioner did not obtain the evidence until he received a response to an advertisement he had placed in the *Elizabethton Star* newspaper seeking information about his case in August of 1998.

In my view, the allegations in the motion established a prima facie case on each element for the writ of error coram nobis. The motion asserted that the petitioner obtained newly discovered evidence, that the evidence related to matters litigated at his trial, and that the petitioner was not at fault for failing to present the evidence at trial because the prosecution withheld the identity of the witness. The motion also asserted that the evidence would have corroborated the petitioner's alibi. I would therefore hold that the Court of Criminal Appeals correctly determined that the substance of the petitioner's motion alleged the necessary elements for raising a petition for the writ of error coram nobis.

*Statute of Limitations*

By concluding that the Court of Criminal Appeals erred in treating the petitioner's motion as an error coram nobis petition, the majority effectively avoids the critical issue in this case: whether due process tolled the one-year statute of limitations for filing a petition for the writ of error coram nobis under our decision in *Workman v. State,* 41 S.W.3d 100 (Tenn. 2001).

As the parties concede, the petitioner failed to file his petition within one (1) year after the judgment became final as required in error coram nobis cases. Tenn. Code Ann. § 27–7–103 (2000). This Court has consistently recognized, however, that principles of due process may toll the writ of error coram nobis statute of limitations

or the post-conviction statute of limitations where the petitioner's liberty interest in raising a late-arising issue outweighs the State's finality interest embodied in the statute. *Workman,* 41 S.W.3d at 101–02; *see also Williams v. State,* 44 S.W.3d 464 (Tenn.2001); *Seals v. State,* 23 S.W.3d 272 (Tenn.2000); *Burford v. State,* 845 S.W.2d 204 (Tenn.1992).

In *Workman,* the petitioner's writ of error coram nobis petition, which claimed that he had evidence unavailable at trial that proved his innocence of capital murder, was dismissed because it was filed after the one-year statute of limitations in error coram nobis cases. A majority of the Supreme Court reversed the dismissal after weighing the competing interests:

> [W]e have no hesitation in concluding that due process precludes application of the statute of limitations to bar consideration of the writ of error coram nobis in this case. [The petitioner's] interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental interest in preventing the litigation [of] stale claims.... The delay in obtaining this evidence is not attributable to the fault of [the petitioner] or his attorneys.... No court in this State has actually held a hearing to fully evaluate the strength of these claims. Under such circumstances, [the petitioner's] interest in obtaining a hearing on these claims clearly outweighs the governmental interest embodied in the statute of limitations. Accordingly, due process precludes summary dismissal of this claim based upon a statutory time bar.

*Workman,* 41 S.W.3d at 103. The case was therefore remanded to the trial court for further proceedings.

Although *Workman* was decided in the context of a capital case, and the Court was duly aware of the interests at stake in a capital case, its holding was not expressly limited to writ of error coram nobis petitions filed in capital cases. Indeed, the reasoning in *Workman* was predicated on a line of cases, beginning with *Burford v. State,* which applied due process principles to toll the statutes of limitations in circumstances *not* limited to capital cases. *See Williams,* 44 S.W.3d at 471; *Seals,* 23 S.W.3d at 279; *Burford,* 845 S.W.2d at 208. As we said in *Burford,* "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." 845 S.W.2d at 208. In sum, this Court has never distinguished between capital and non-capital cases when analyzing whether due process mandates the tolling of a statute of limitations. Accordingly, I would affirm the Court of Criminal Appeals' determination that *Workman* is not limited to capital cases.

In applying the due process balancing analysis from *Burford* and *Workman,* I conclude that the petitioner's allegations that the State withheld the identification of an alibi witness and exculpatory statements made by that witness raise a substantial liberty interest affecting the petitioner's rights to due process and a fair trial. Indeed, this Court has recognized the significance of a suppression of exculpatory evidence issue when considering a petitioner's liberty interest under the due process balancing analysis. *See Sample v. State,* 82 S.W.3d at 276; *see also Workman,* 41 S.W.3d at 102.

Although the majority states in footnote 10 that it is reserving the later-arising claim question for another day, it engages in an extensive discussion of the alleged facts and then comes to conclusions about

the issue it purports not to address. I disagree with the majority's conclusion that the petitioner's liberty interest was negated because he failed to raise a later-arising claim. The issue is not simply the question of the petitioner's own whereabouts for the purpose of an alibi, but rather, the State's suppression of the identification of a witness and an exculpatory statement made by that witness. Moreover, the petitioner's knowledge of his location at the time of the offense would not be nearly as persuasive without the corroboration of a disinterested witness. In any event, any conclusions with regard to the petitioner's fault require factual findings that are better left to the trial court in evaluating whether the writ of error coram nobis requirements have been met. In short, I do not agree that the petitioner has failed to assert a later-arising issue or that the petitioner's liberty interests are diminished as concluded by the majority.

In addition, I believe that the petitioner's sentence of life imprisonment further heightened his liberty interest in seeking to raise these issues. The State has offered no principled basis for either distinguishing between a life sentence and a capital sentence in weighing a petitioner's liberty interest under the due process analysis or for finding that a life sentence does not implicate a significant liberty interest. The State's failure was foreordained because there is no question that a sentence of life imprisonment is a substantial deprivation of liberty.

Finally, I would conclude that balancing the interests of the parties favors the petitioner's liberty interest. The Court has implicitly recognized, for example, that the State's finality interest is seriously compromised when the prosecution has suppressed evidence in violation of its constitutional duty and is directly responsible for causing the delay in finality. *See Sample,*

82 S.W.3d at 276 ("[T]he 16–month period under these circumstances must be viewed with and mitigated by the fact that the prosecution suppressed the evidence and prevented the issue from being litigated for over 10 years."). Indeed, it is dubious to suggest that the State has any legitimate interest in the finality of a conviction where that conviction may have been secured in part through the suppression of evidence favorable to the accused. Any other conclusion is tantamount to stating that a petitioner should have no available remedy if and when the prosecution has succeeded in suppressing evidence until after the applicable statute of limitations has expired. I strongly reject such a view.

I disagree with Justice Holder's concurring opinion's conclusion that the record on appeal is insufficient to address this issue or to apply the due process analysis. On the contrary, the petitioner's liberty interests and the State's alleged interests in finality that I have discussed are fully evident from the record and can be balanced under the due process principles described in our controlling cases. I do agree, however, that a remand for additional proceedings is necessary to resolve the factual issues with respect to the writ of error coram nobis requirements. Accordingly, I would affirm the Court of Criminal Appeals' conclusion that due process tolled the one-year statute of limitations and that the case must be remanded to the trial court for further proceedings.

## CONCLUSION

I concur in the majority's opinion that the petitioner's motion did not establish grounds to reopen his post-conviction suit pursuant to Tennessee Code Annotated section 40–30–217(a). I dissent, however, from the majority's conclusion that the Court of Criminal Appeals erred in treating the motion as a petition for the writ of

error coram nobis. In my view, the substance of the motion alleged adequate grounds to be treated as a petition for the writ of error coram nobis and the majority of this Court has erred in failing to address the important constitutional issue this case was taken to resolve.

Accordingly, I would address the merits of this case and would hold that the due process balancing analysis under *Workman v. State,* 41 S.W.3d 100 (Tenn.2001), may toll the one-year writ of error coram nobis statute of limitations where the prosecution has suppressed exculpatory evidence in a non-capital case. This Court has never distinguished between capital and non-capital cases in considering whether due process mandates the tolling of a statute of limitations, nor is there any reason to do so. I would also hold that the petitioner's motion asserted a prima facie case for the issuance of the writ of error coram nobis and required that the statute of limitations be tolled under due process principles.

I would therefore affirm the Court of Criminal Appeals' judgment remanding the case to the trial court for a determination of whether (1) the petitioner has newly discovered evidence relating to matters litigated at trial, (2) the petitioner was without fault in failing to present the evidence, and (3) the evidence may have resulted in a different judgment had it been presented at trial. Because the majority opinion fails to address these difficult issues, I respectfully dissent. I am authorized to state that Justice Birch joins in this concurring and dissenting opinion.

